UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JONATHAN BERNARD WILLIAMS                          CIVIL ACTION

VERSUS                                             NO. 15-2188

CAROLYN W. COLVIN, ACTING                          SECTION "H" (2)
COMMISSIONER OF SOCIAL SECURITY

**ORDER ON MOTION;**
**REPORT AND RECOMMENDATION**

Plaintiff, Jonathan Bernard Williams, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying plaintiff's claim for supplemental security income benefits ("SSI") under Title XVI of the Act. 42 U.S.C. §§ 405(g), 1381a. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

I.    PROCEDURAL HISTORY

Williams filed his application for SSI on May 8, 2012, alleging disability since April 21, 2012, due to "multiple bodily injuries from being hit by a car." (Tr. 196-99, 213-17). After his claim was denied at the agency level, he requested a hearing before an Administrative Law Judge ("ALJ"), which was convened on February 14, 2013. Plaintiff did not attend this hearing because he was in jail. (Tr. 28-37, 131). The ALJ held a second hearing on June 4, 2013. (Tr. 38-54). Williams appeared for this hearing, but the ALJ postponed the hearing to obtain a consultative examination for plaintiff with

an orthopedist.  (Tr. 49-50).  The ALJ held a third hearing on December 12, 2013.  (Tr.

55-70).  Williams, who was represented by counsel at the hearing, testified by telephone

because he was incarcerated again.  (Tr. 58-64).  The ALJ issued a decision denying the

application for benefits on January 30, 2014.  (Tr. 9-21).  The Appeals Council denied

plaintiff's request for review on May 18, 2015 (Tr. 1-3), and the ALJ's decision became

the Commissioner's final decision for purposes of this court's review.

Plaintiff filed a timely memorandum.  Record Doc. No. 24.  Defendant filed a

timely opposition memorandum.  Record Doc. No. 33.  Williams received leave to file

a memorandum in response, Record Doc. Nos. 34, 35, to which he attached a few

medical records that are not in the administrative record.  Record Doc. No. 36.  The court

construes this submission as a motion for leave to supplement the administrative record

with new evidence.

II.   STATEMENT OF ISSUES ON APPEAL

Williams does not identify any specific errors in his pro se memorandum, but

argues that his medical problems are disabling.  The court will review the entire record

to determine whether substantial evidence supports the ALJ's findings.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

1.   Williams has severe impairments consisting of degenerative disc disease,
osteoarthritis of the back and knees, and depression.

2.   Plaintiff has the residual functional capacity to perform light work except
that he is limited to simple, routine repetitive tasks performed in a low-

2

stress job, defined as only occasional changes in the work setting. The work could be performed around co-workers during the work day, but should involve only occasional interaction with co-workers.

3.     His medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

4.     Williams is unable to perform his past relevant work as an oyster fisherman and tire repairman.

5.     Considering plaintiff's age, education, work experience and residual functional capacity, jobs exist in significant numbers in the national economy that he can perform, such as housekeeping worker, deli slicer and floor worker or warehouse clerk.

6.     Plaintiff has not been under a disability, as defined in the Act, since May 8, 2012, the date of his application.

(Tr. 14-21).

The ALJ noted that Williams was incarcerated from December 29, 2012, through March 5, 2013, and that he testified that he was sentenced on October 1, 2013, to three years in jail. The ALJ stated that a claimant cannot qualify for SSI while in jail and that there has been no 12-month period since plaintiff's application date that he has not been in jail or prison. (Tr. 12).

IV.    <u>PLAINTIFF'S MOTION TO SUBMIT NEW EVIDENCE</u>

The final administrative hearing was on December 12, 2013. The ALJ rendered her decision on January 30, 2014, based on medical evidence in the record dated through

July 23, 2013.  The Appeals Council denied plaintiff's request for review on May 18, 2015.  Williams submitted to the court a few medical records dated September 25, October 16, and November 21, 2013, which he contends support his disability claim. The court construes plaintiff's submission as a motion to submit new evidence, which is DENIED for the following reasons.

This court may <u>not</u> issue factual findings on new medical evidence and may review such evidence only to determine if a remand to the Commissioner is appropriate. <u>Ferrari v. Astrue</u>, 435 F. App'x 314, 314-15 (5th Cir. 2010); <u>Martinez v. Astrue</u>, 252 F. App'x 585, 587 (5th Cir. 2007) (citing 42 U.S.C.A. § 405(g); <u>Haywood v. Sullivan</u>, 888 F.2d 1463, 1471 (5th Cir. 1989)); <u>Ripley v. Chater</u>, 67 F.3d 552, 555 (5th Cir. 1995). Accordingly, I must determine whether this case should be remanded so that the Commissioner may consider the allegedly new and material evidence.

The court may remand for consideration of new evidence only upon a showing that the evidence is new <u>and</u> material, <u>and</u> that good cause exists for plaintiff's failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); <u>Ferrari</u>, 435 F. App'x at 314; <u>Joubert v. Astrue</u>, 287 F. App'x 380, 383 (5th Cir. 2008) (citing <u>Ripley</u>, 67 F.3d at 555); <u>Garson v. Barnhart</u>, 162 F. App'x 301, 303 (5th Cir. 2006) (citing <u>Leggett v. Chater</u>, 67 F.3d 558, 567 (5th Cir. 1995)).

"Evidence that was 'not in existence at the time of the administrative and district court proceedings, meets the "new" requirement for remand to the Secretary.'" <u>Hunter</u>

4

v. Astrue, 283 F. App'x 261, 262 (5th Cir. 2008)  (quoting Haywood, 888 F.2d at 1471);
accord Johnson v. Soc. Sec. Admin., 631 F. App'x 260, 263 (5th Cir. 2016).  Plaintiff's
medical records dated from September 25 through November 21, 2013, are not "new"
evidence because they existed before the ALJ rendered her decision.

"Evidence which is merely cumulative of that already in the administrative record
is not 'new' evidence that would support a remand under § 405(g)."  Wilson v. Astrue,
No. H-08-01392, 2009 WL 2341803, at *4 (S.D. Tex. July 27, 2009) (citing Pierre v.
Sullivan, 884 F.2d 799, 803 (5th Cir. 1989); Bradley v. Bowen, 809 F.2d 1054, 1058 (5th
Cir. 1987)); accord Ferrari, 435 F. App'x at 314-15; Perkins v. Shalala, No. 93-01940,
1994 WL 523788, at *3 (5th Cir. Sept. 12, 1994); Martin v. Barnhart, No. 02-3574, 2004
WL 1661207, at *3 (E.D. La. July 23, 2004) (citing Pierre, 884 F.2d at 803).  The records
that Williams has submitted, consisting merely of medications lists and diagnoses of knee
pain and high blood pressure, are merely cumulative of medical evidence that was in the
administrative record that the ALJ reviewed.

In addition, "'[f]or new evidence to be material, there must exist the "reasonable
possibility that it would have changed the outcome of the Secretary's determination."'"
Hunter, 283 F. App'x at 262 (quotations and citations omitted); accord Jones v. Astrue,
228 F. App'x 403, 406 (5th Cir. 2007) (citing 28 U.S.C. § 405(g)).  No such reasonable
possibility exists when, as here, the evidence is merely cumulative of evidence that the
ALJ considered.  Matthews v. Colvin, No. 4:15-CV-169-O-BL, 2016 WL 1054599, at

*5 (N.D. Tex. Mar. 17, 2016); <u>Tate v. Colvin</u>, No. 13-6552, 2014 WL 4982662, at *11

(E.D. La. Oct. 6, 2014) (citing <u>Haywood</u>, 888 F.2d at 1471; <u>Pierre</u>, 884 F.2d at 803;

<u>Lenoir v. Apfel</u>, 234 F.3d 29, 2000 WL 1568184, at *1 (5th Cir. Sept. 14, 2000); <u>Martin</u>

<u>v. Barnhart</u>, No. 02-3574, 2004 WL 1661207, at *3 (E.D. La. July 23, 2004)).

Finally, even if the evidence were new and material as defined by the case law,

Williams has not shown good cause for his failure to incorporate it into the record either

before the ALJ's decision or before the Appeals Council denied review more than one

year later.  "To demonstrate good cause, the claimant must provide an excusable

explanation for not submitting the records earlier in the proceeding."  <u>Dennison v.</u>

<u>Astrue</u>, No. 08-4677, 2010 WL 744935, at *6 (E.D. La. Mar. 1, 2010) (citing <u>Pierre</u>, 884

F.2d at 803; <u>Skalij</u>, 1996 WL 731580, at *3); <u>see also</u> <u>Mouser v. Astrue</u>, 545 F.3d 634,

637 (8th Cir. 2008) ("Good cause does not exist when the claimant had the opportunity

to obtain the new evidence before the administrative record closed but failed to do so

without providing sufficient explanation.") (quotation and citation omitted).  The mere

fact that evidence is "new" does not, by itself, constitute good cause for failing to

incorporate such evidence into the administrative record.  <u>Wilson</u>, 2009 WL 2341803,

at *4 (citing <u>Pierre</u>, 884 F.2d at 803).

In the instant case, Williams "does not provide a satisfactory explanation for [the

evidence's] absence from the initial proceedings."  <u>Leggett</u>, 67 F.3d at 567.  He has

proffered <u>no explanation</u> why he could not have submitted the evidence before either the

ALJ's or the Appeals Council's decisions, and therefore has not shown good cause for a remand to consider the evidence now.  Pierre, 884 F.2d at 804.

Accordingly, plaintiff's motion to submit new evidence is denied.

V.    ANALYSIS OF PLAINTIFF'S APPEAL

    A.    Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence.  Richard ex rel. Z.N.F. v. Astrue, 480 F. App'x 773, 776 (5th Cir. 2012) (citing Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005)); Stringer v. Astrue, 465 F. App'x 361, 363 (5th Cir. 2012) (citing Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002)).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Richard ex rel. Z.N.F., 480 F. App'x at 776; Stringer, 465 F. App'x at 363-64; Perez, 415 F.3d at 461.  This court may not reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.  Halterman ex rel. Halterman v. Colvin, No. 12-31099, 2013 WL 5913945, at *2 (5th Cir. May 9, 2013) (citing Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000)); Stringer, 465 F. App'x at 364.  The

Commissioner, rather than the courts, must resolve conflicts in the evidence. Luckey v. Astrue, 458 F. App'x 322, 324 (5th Cir. 2011) (citing Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990)); Newton, 209 F.3d at 452.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Joubert v. Astrue, 287 F. App'x 380, 382 (5th Cir. 2008) (citing Perez, 415 F.3d at 461).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ray v. Barnhart, 163 F. App'x 308, 311 (5th Cir. 2006) (citing Perales, 402 U.S. at 390); Perez, 415 F.3d at 461.

To be considered disabled and eligible for SSI, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2013).  The regulations

include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1]  Id. §§ 404.1520, 416.920; Alexander v. Astrue, 412 F.  App'x 719, 720 (5th Cir. 2011) (citing Audler v. Astrue, 501 F.3d 446, 447 (5th Cir. 2007)); Perez, 415 F.3d at 461. The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Id.

The claimant has the burden of proof under the first four parts of the inquiry.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. Id. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  Alexander, 412 F. App'x 720-21; Perez, 415 F.3d at 461.

The court weighs four elements of proof when determining whether there is substantial evidence of disability:  "'(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.'"  Chrisner v. Astrue, 249 F. App'x 354, 356 (5th Cir. 2007) (quoting Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991)); accord Perez, 415 F.3d at 463.

B.    Factual Background

Williams was represented by counsel at the second hearing on June 4, 2013.  He testified that he was 48 years old, unmarried, had a high school education and lived with his sister because he lost his trailer "in the storm."[2]  He said he has no young children. He stated that he had no income other than food stamps and received free health care through the state.  (Tr. 42-43).

Plaintiff testified that he was in an automobile accident in April 2012 and filed a personal injury lawsuit, which was still pending.  He said he last worked in 2010 as a mechanic and an oyster fisherman.  (Tr. 43).  He stated that he worked a few days on

---

[2]Plaintiff's medical records (Tr. 434, 489) indicate that he lost his trailer during Hurricane Isaac, which made landfall in Plaquemines Parish, Louisiana, on August 29, 2012.  Robbie Berg, "Tropical Cyclone Report Hurricane Isaac (AL092012) 21 August - 1 September 2012" (Nat'l Hurricane Ctr., Jan. 28, 2013), http://www.nhc.noaa.gov/data/tcr/AL092012_Isaac.pdf (visited June 3, 2016).

each job during the same time period, so that he worked a full 40-hour week with both jobs combined.  He testified that he stopped working in 2010 because his right arm "freezes up" during cold weather, which is caused by nerve damage in his right arm as a result of a bad cut in the arm in 1992 or 1993.  He said he was never supposed to use his right arm again after that injury, but he regained some use of it.  He stated that his inability to use the arm is getting worse, especially during the winter, when he cannot use it at all.  (Tr. 44).

Williams said he has not looked for work since 2010, although he sometimes fishes for oysters and shrimp.  He stated that he cannot work as a mechanic because he cannot do the necessary lifting and cannot concentrate.

Plaintiff testified that he has been seeing a mental health care provider, Dr. John Wells,[3] for six to seven months and that he now sees Dr. Wells every Wednesday.  He said his primary care provider referred him to Dr. Wells because of plaintiff's high level of stress and worry, which prevent him from doing the things he used to do.  (Tr. 45). Williams stated that Dr. Wills prescribes medication, which helps with, but does not eliminate, his mental health symptoms.  He said he takes pain medication prescribed by other doctors, but cannot afford to pay for all of his prescriptions.  He testified that he has a hard time concentrating, paying attention and doing things on his own.  He said he gets frustrated because he used to do something all the time, but cannot do anything now.  (Tr.

---

[3]The transcript misspells this doctor's name as "Wills."

46).  He stated that he has a lot of stress because he lost his house, cannot do anything to get it back, and is in pain daily.

Williams testified that the car that hit him "ran flat over me," but no doctor has recommended surgery.  (Tr. 47).  He said his worst pain as a result of the accident is in his lower back.  He stated that he takes pain medication daily, which controls his pain a little, but there are days, especially during cold weather, when the medication does not help.  (Tr. 47-48).  He testified that he has pain in his right leg and both knees, for which his doctor prescribes arthritis medication, and that his right leg swells.  He said his left leg was injured in the accident and his right leg was not, but he has had long-term trouble with arthritis in his right knee.  He stated that he still sees his primary care physician, Dr. Pranikoff.  (Tr. 48).

Plaintiff said he went to LSU Hospital Clinic several times on referrals from Dr. Pranikoff, but did not know if he had seen an orthopedist.  The ALJ stated that she found the record insufficient to make a finding based on Dr. Pranikoff's reports.  (Tr. 48-49).  Williams said he would be willing to see an orthopedist if the ALJ sent him to one.  (Tr. 49).  He testified that he had not been in jail since his then most recent prison release and that none of his doctors have referred him for an MRI.  The ALJ decided to refer plaintiff for a consultative examination with an orthopedist, to be followed by a supplemental hearing.  (Tr. 50-51).

12

At the third hearing on December 12, 2013, plaintiff was again represented by an attorney, but Williams testified by telephone from River Correctional Center in Ferriday, Louisiana, where he began serving a three-year sentence in October 2013.  He stated that he was 49 years old, had completed the twelfth grade in regular education classes and last worked in 2010.  (Tr. 58-59).

Plaintiff testified that he had not received medical treatment anywhere except LSU Interim Hospital since the last hearing.  He said he has pain in his lower back, knees and from his foot to his neck.  He stated that the right side of his body is "very numb" and he suffers from bad headaches.  He testified that he was in the process of having an operation on his knee, but his doctor gave him more medication until [inaudible].  He said that pain shoots from his leg to his knee on the right side.  (Tr. 59-60).

Williams stated that he had an MRI and blood tests at LSU, that his blood pressure and sugar are high and that the doctor wanted him to have his eyes checked.  He testified that he has constant, daily pain in his low back, neck, both knees and right hip.  (Tr. 60-61).  He said he has constant, daily numbness from his arm to his legs on the right side, especially in his right arm because of nerve damage, and that his right arm is very painful in cold weather.  He stated that he takes pain medications three times daily.

Plaintiff testified that he can sit for 30 minutes before he needs to get up and move around.  He estimated he could sit for a total of one hour during an eight-hour day.  (Tr. 61-62).  He said he can stand for 15 minutes at a time and for 30 minutes total in an

13

eight-hour day.  He stated that he lies down for one hour total in an eight-hour day because he alternates lying down and getting up continuously throughout the day, depending on the pain.  He said his pain makes it awkward for him to lie down, especially on his right side.

Williams stated that he suffers from depression every day and takes medication for it.  (Tr. 62).  He testified that he cannot think or concentrate very well and gets "aggravated" because of stress and pain.  He said he cannot watch television as much as he wants because he cannot concentrate on one thing at a time.   He stated that he can concentrate for only 10 to 15 minutes before his attention wanders.

Plaintiff said that his pain medication was recently "upgraded."  (Tr. 63).  He testified that Seroquel[4] had been ordered for him, but had not yet arrived.  He said he

---

[4]Seroquel XR (generic name:  quetiapine fumarate) is used to treat schizophrenia, bipolar disorder and major depressive disorder. PDR.net (PDR Network, LLC), http://www.pdr.net/pdr-consumer-monograph/seroquel-xr?druglabelid=2186&ConsumerId=1972 (visited June 1, 2016).

takes Zoloft,[5] tramadol,[6] meloxicam,[7] Tylenol, pills for cold, Xanax for bleeding ulcers[8] and another medication for his stomach that he could not recall.

C.    Vocational Expert Testimony

Although plaintiff did not attend the first hearing on February 14, 2013, his attorney was present.  A vocational expert, Cindy Harris, testified at the hearing based on her review of plaintiff's vocational records.  Harris stated that Williams had worked during the past 15 years as an oyster fisherman and a tire repairman, both of which are semi-skilled jobs at a heavy exertional level.  She said she could not tell how long plaintiff had worked as a sheet rock installer in 2008, but it did not appear that he had

---

[5]Zoloft (generic name: sertraline hydrochloride) is a selective serotonin reuptake inhibitor "used to treat major depressive disorder, obsessive compulsive disorder, panic disorder, post-traumatic stress disorder, premenstrual dysphoric disorder, and social anxiety disorder." Id., http://www.pdr.net/pdr-consumer-monograph/zoloft?druglabelid=474&ConsumerId=1503 (visited June 1, 2016).

[6]Ultram (generic name: tramadol hydrochloride) is used to treat moderate to moderately severe pain. Id., http://www.pdr.net/pdr-consumer-monograph/ultram?druglabelid=950&ConsumerId=1467 (visited June 1, 2016).

[7]Mobic (generic name: meloxicam) "is a nonsteroidal anti-inflammatory drug (NSAID) used to treat osteoarthritis, rheumatoid arthritis in adults, and juvenile rheumatoid arthritis." Id., http://www.pdr.net/pdr-consumer-monograph/mobic?druglabelid=1245&ConsumerId=1546 (visited June 1, 2016).

[8]Xanax (generic name: alprazolam) is used for the management of anxiety disorder, short-term relief of anxiety symptoms, and treatment of panic disorder. Id., http://www.pdr.net/pdr-consumer-monograph/xanax?druglabelid=1873&ConsumerId=1491 (visited June 1, 2016).  Plaintiff might have meant Zantac (generic name:  ranitidine), which is used to treat duodenal and gastric ulcers, erosive esophagitis, gastroesophageal reflux disease and other conditions involving excess stomach acid. Id., http://www.pdr.net/pdr-consumer-monograph/zantac-150-and-300-tablets?druglabelid=241&ConsumerId=5229 (visited June 10, 2016).

performed that job long enough to meet the requirements of past relevant work.  The ALJ agreed with that assessment.

The ALJ posed a hypothetical of a person with the residual functional capacity to perform light work, including lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, and who was limited to simple, routine, repetitive tasks.  Harris testified that such a person could not perform plaintiff's past relevant work, but could perform light, unskilled jobs that are available in the regional and national economy, such as cashier, information clerk or housekeeping cleaner.  (Tr. 33-34).

Plaintiff's attorney posed a second hypothetical of a person with the same residual functional capacity, but who had to use a cane or other assistive device to ambulate. Harris testified that this limitation would eliminate the housekeeping job and reduce the available cashier positions by 75 percent, but would have no impact on the availability of information clerk jobs.  (Tr. 34).  Harris stated that a person who had to miss work more than two days per month or who frequently (defined as up to two-thirds of the day) experienced pain that would interfere with the ability to concentrate and perform simple work tasks would not be able to maintain employment.  (Tr. 34-35).

Another vocational expert, Katrina S. Virden, testified at the last hearing.  She agreed with Harris's characterization of plaintiff's past relevant work.  (Tr. 64-65).

The ALJ posed a hypothetical of a person with the same age, education and past work experience as Williams who has the residual functional capacity to perform light

16

work, including lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, and is limited to simple, routine, repetitive tasks in a low-stress job, defined as only occasional changes in the work setting.  The ALJ stated that the hypothetical person could be around co-workers, but could have only occasional interaction with them during the work day.  Virden testified that such a person could not perform plaintiff's past relevant work, but could perform light, unskilled work, such as housekeeper, deli slicer and floor worker, or warehouse clerk, which are available in significant numbers in the state and national economy.  (Tr. 66-67).

Plaintiff's attorney posed a hypothetical of a person with the same age, education and past work experience as Williams who has the residual functional capacity to perform sedentary work and has only fair (defined as seriously limited, but not precluded) abilities to perform unskilled work; maintain regular attendance and be punctual within customary, strict tolerances; sustain an ordinary routine without special supervision; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; deal with normal work stress; understand, remember and carry out detailed instructions; and travel in unfamiliar places. The hypothetical person would often have deficiencies of concentration, persistence and pace resulting in failure to complete tasks in a timely manner in a work setting and would have episodes of deterioration or decompensation that cause him to withdraw from the

work situation or experience exacerbation of signs and symptoms once or twice daily. Harris testified that such a person could not perform any work. (Tr. 67-68).

Plaintiff's attorney posed a second hypothetical of a person with the same age, education and past work experience as Williams who has the residual functional capacity to lift up to 10 pounds occasionally and to sit, stand and/or walk for less than two hours total in an eight-hour work day. (Tr. 68). The vocational expert testified that such a person would not be able to perform any work. (Tr. 69).

D.    Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 16-19). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

Substantial evidence supports the ALJ's findings. After finding that Williams has severe impairments consisting of degenerative disc disease, osteoarthritis of the back and knees, and depression, the ALJ proceeded through the five-step sequential evaluation and found that plaintiff is not disabled because he has the residual functional capacity for light work, limited to simple, routine repetitive tasks performed in a low-stress job with only occasional interaction with co-workers. This residual functional capacity accounts for all of the limitations that the ALJ found credible and is supported by substantial

18

evidence.  At the fifth step, appropriately relying on vocational expert testimony, Dominguez-Herrera v. Astrue, 334 F. App'x 651, 654 (5th Cir. 2009) (citing Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995)) the ALJ found that Williams can perform jobs that are available in the national economy.

The ALJ's summary of the medical evidence was thorough and accurate.  As she is obligated to do, the ALJ assessed the credibility of the witnesses and weighed conflicting medical evidence.  "The ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Ramirez v. Colvin, 606 F. App'x 775, 779 (5th Cir. 2015) (quotation omitted); accord Yates v. Colvin, 606 F. App'x 225, 229 (5th Cir. 2015) (citation omitted).  Although the ALJ in this case gave less weight to the treating physicians' opinions than to those of the consultative examining orthopedist, "[c]onflicts of evidence are for the Commissioner, not the courts, to resolve." Byrd v. Comm'r of Social Sec., 368 F. App'x 542, 543 (5th Cir. 2010) (quotation omitted).

"[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Newton, 209 F.3d at 455 (quotation omitted).  A treating physician's opinions are not conclusive and may be assigned little or no weight when good cause is shown, such as when "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic

techniques, or is otherwise unsupported by the evidence."  Id. at 455-56 (quotations and citations omitted).

In the instant case, the ALJ resolved the conflict in the medical opinions based on plaintiff's treatment records, including primarily the objective medical testing, and the findings of the consultative orthopedist, Donald C. Faust, M.D.  Escalante v. Astrue, 286 F. App'x 179, 180 (5th Cir. 2008) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990)).

The ALJ considered the opinions of plaintiff's treating general practitioner, Lincoln Pranikoff, M.D., on a Functional Capacity Questionnaire checklist form dated November 15, 2012, that Williams can either sit or stand and/or walk for no more than 20 to 30 minutes in an 8-hour work day due to back and leg pain; can lift no more than 10 pounds occasionally; will frequently experience pain severe enough to interfere with attention and concentration needed for even simple work tasks; and can be expected to miss more than four days of work per month because of his impairments.  (Tr. 439). However, the ALJ rejected those opinions as unsupported by plaintiff's progress notes and objective test results.  This finding is substantially supported by the medical evidence, which the ALJ thoroughly and accurately summarized in her decision.

The ALJ assigned some weight to the opinions of Dr. Faust, the consultative examining orthopedist.  Dr. Faust reviewed plaintiff's medical records and performed a thorough physical examination on July 23, 2013.  He found no objective deficits, other

than a severe laceration of plaintiff's right arm, which had happened 21 years earlier and had not inhibited Williams from working as a car mechanic and oyster fisherman.  Dr. Faust noted that plaintiff's complaints were "subjective only and he magnifies his difficulty to bias the examination." (Tr. 490).  The doctor stated that Williams is capable of gainful employment and that "[h]is exaggerated difficulties would appear he is functioning better than his history would indicate." (Tr. 491).  On a Medical Source Statement of Ability to Do Work-Related Activities dated the same day, Dr. Faust opined that Williams can frequently lift and carry up to 50 pounds in an 8-hour work day, continuously lift and carry up to 20 pounds, and sit, stand and/or walk for 8 hours a day.  Although Williams appeared at the examination using a cane (Tr. 489), Dr. Faust opined that he did not need a cane to ambulate.  (Tr. 493-94).  The orthopedist said that Williams could use his right hand occasionally for fingering and pushing/pulling and never for feeling, but placed no limitations on plaintiff's use of his feet or ability to climb, balance, stoop, kneel, crouch or crawl.  (Tr. 495-96).

The ALJ found that the entire medical record supported a finding that Williams was more limited physically than the medium to heavy exertional work capacity assessed by Dr. Faust, but was less limited than the extreme restrictions assessed by Dr. Pranikoff. The ALJ afforded the greatest weight to plaintiff's multiple objective tests, which were consistently essentially normal, showing only mild degenerative changes in his left ankle, lumbar spine and both knees.  The ALJ therefore determined that Williams has a residual

functional capacity for light work, with the nonexertional limitations in her decision that are based on his severe impairment of depression.

The ALJ assigned little weight to the opinions perfunctorily noted on a Mental Impairment Questionnaire checklist form dated May 23, 2013, by plaintiff's treating psychiatrist, John Wells, M.D., that Williams has only fair abilities to perform 8 of the 26 mental work-related tasks listed on the form; often experiences deficiencies of concentration, persistence and pace; and would experience or had experienced (the form is not clear) episodes of decompensation once or twice during an unspecified time period. (Tr. 483-87). The ALJ discredited these limitations because they are not supported by the mental health treatment notes and because Dr. Wells did not explain the limitations given on the checklist form. (Tr. 14, 18). The ALJ's findings regarding this report are substantially supported by the record.

The mental health progress notes from Plaquemines Primary Care reflect only three visits to Dr. Wells and six visits to a psychologist, Anne Ci___ (last name illegible), Psy.D., between October 24 and December 11, 2012. Williams saw Dr. Ci___ on three of the same dates that he saw Dr. Wells, which explains why Dr. Wells stated on the checklist form that Williams had been seen in the clinic six times. There is no evidence that Williams ever had any episodes of decompensation. The progress notes reflect that his depressive symptoms improved somewhat with treatment. At plaintiff's third and final visit to Dr. Wells on November 14, 2012, the psychiatrist noted that Dr. Pranikoff,

a general practitioner, could write plaintiff's prescription for Zoloft, that plaintiff's Seroquel XR dosage could be tapered in the future as his coping skills improved, and that Williams should return to see Dr. Wells as needed.  Dr. Ci___ stated in the notes of her sixth and final session with Williams that he had finished individual therapy and should follow up in one month to begin group therapy.  (Tr. 434-438).  Dr. Pranikoff prescribed sertraline hydrochloride (generic Zoloft) and Seroquel XR on April 4, 2013, apparently without any physical or mental status examination.  (Tr. 448-49).  Despite Dr. Wells's statement on the checklist form that Williams returned on April 17, 2013, the record contains no evidence that Williams was treated by any mental health care provider after December 11, 2012.

A claimant's lack of need for strong medication or failure to seek treatment are relevant factors to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount complaints of disabling pain or other limitations.  Clayborne v. Astrue, 260 F. App'x 735, 737 (5th Cir. 2008); Doss v. Barnhart, 137 F. App'x 689, 690 (5th Cir. 2005); Bryan v. Halter, 252 F.3d 1357, 2001 WL 422878, at *2 (5th Cir. Apr. 5, 2001) (citing 20 C.F.R. §§ 404.1530, 416.930; Wren v. Sullivan, 925 F.2d 123, 128 (5th Cir. 1991)); Austin v. Apfel, 205 F.3d 1338, 1999 WL 1338401, at *1 (5th Cir. 1999) (citing Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991)).  In particular, a plaintiff's "failure to seek treatment for depression is an indication of nondisability."  Doss, 137 F. App'x at 690 (citing Villa v. Sullivan, 895

23

F.2d 1019, 1024 (5th Cir. 1990)); accord McKinney v. Colvin, No. 3:13-CV-900HTW-LRA, 2014 WL 652948, at *3 (S.D. Miss. Feb. 19, 2014) (citing Doss, 137 F. App'x at 690; Griego, 940 F.2d at 945; Villa, 895 F.2d at 1024).

"[T]he Act empowers the ALJ to analyze the physicians' testimony. Substantial evidence supports the ALJ's decision to disregard the [treating] physicians' conclusions. That basis is enough to survive our review." Greenspan, 38 F.3d at 237.

The ALJ's finding that plaintiff was not entirely credible is also supported by substantial evidence. Williams testified on June 14, 2013, that he had been seeing Dr. Wells for six to seven months and that he sees Dr. Wells every Wednesday. The record contains no medical evidence to support that testimony. Dr. Wells stated on his form checklist Mental Impairment Questionnaire, and my review of the records confirms, that Williams was seen by mental health providers at Plaquemines Primary Care on six dates between October 24 and December 11, 2012. As the ALJ noted, Williams was incarcerated from December 29, 2012, through March 5, 2013. Plaintiff's only documented appointment in 2013 was with Dr. Pranikoff on April 4, 2013, for medication management only. (Tr. 448-49).

As the ALJ accurately stated, the medical records consistently characterize plaintiff's orthopedic abnormalities as mild and do not support his allegations of grave physical limitations. Dr. Faust found that Williams exhibited no objective findings, except for 21-year-old damage to his right arm that had not inhibited him from working,

and that he exaggerated his difficulty during the doctor's testing to bias the examination. In addition, the ALJ correctly noted that Dr. Wells opined on his Mental Impairment Questionnaire checklist form that Williams lacked motivation during therapy to effect change, was not adherent to prescribed therapy and failed to progress because of lack of therapeutic engagement.  This evidence substantially supports the ALJ's finding that Williams was not entirely credible.

Accordingly, plaintiff's appeal is meritless.

CONCLUSION

Substantial evidence supports the ALJ's findings that Williams has the residual functional capacity to perform work available in the national economy.

**RECOMMENDATION**

Accordingly, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v.

<u>United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[9]

New Orleans, Louisiana, this __27th__ day of June, 2016.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[9]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

26